**FILED**

**August 18, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 3:05 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| **Christopher Batey,** | ) | **Docket No.: 2016-05-0666** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Deliver This, Inc.,** | ) | **State File No. 19123-2015** |
| **Employer,** | ) | |
| **And** | ) | |
| **Auto Owners Insurance Company,** | ) | **Judge Thomas Wyatt** |
| **Insurance Carrier.** | ) | |

## COMPENSATION HEARING ORDER FOR PERMANENT PARTIAL DISABILITY AND MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on August 10, 2017, for a Compensation Hearing. The primary legal issue is the extent of Mr. Batey's award of permanent disability benefits. The determination of this issue requires the Court to decide if Mr. Batey is entitled to permanent total disability (PTD) benefits; permanent partial disability (PPD) benefits under section 50-6-242 (extraordinary relief); a resulting award of PPD benefits; or only the original award of PPD benefits. For the reasons set forth below, the Court holds Mr. Batey is entitled to 275 weeks of PPD benefits under section 50-6-242.[1]

### History of Claim

Christopher Batey is a forty-five-year-old resident of Cannon County, Tennessee. He is a high-school graduate who performed manufacturing, warehousing, and delivery jobs before the date of injury. In 2014, he became a delivery driver for Deliver This, Inc. (DTI).

---

[1] The Court also awards Mr. Batey medical benefits under the parties' agreement announced during the hearing.

1

On February 24, 2015, Mr. Batey felt a pop followed by immediate pain while bending to shrink-wrap a pallet of merchandise. He reported the injury to DTI and selected orthopedist Dr. Melvin Law from a panel. Dr. Law diagnosed and surgically removed a large herniation of the L5-S1 disc and released Mr. Batey to work without restrictions on August 19, 2015. In November 2015, Dr. Law completed an unemployment form in which he stated Mr. Batey could perform his usual duties at DTI. When asked in his deposition whether the above statements represented Mr. Batey's work abilities post-surgically, Dr. Law testified: "Yes . . . at that time[.]" (Ex. 3 at 22.)

On March 29, 2016, Dr. Law completed a Standard Form Medical Report (C-32) and recommended that Mr. Batey limit his activities due to his spinal injury as follows:

- no lifting greater than twenty pounds, nor frequent lifting greater than ten pounds;
- no lifting and/or carrying more than three hours per day;
- no sitting more than six hours per day;
- no standing or walking more than six hours per day;
- no repetitive pushing or pulling;
- no frequent or repetitive climbing, balancing, stooping, kneeling, crouching, crawling, or twisting; and
- no operation of machinery if taking narcotic medication.

*Id.* at 61.

Dr. Law also responded to an April 11, 2016 letter by stating that Mr. Batey could not return to his usual duties at DTI, which included lifting items weighing up to sixty pounds. In his deposition, Dr. Law explained this restriction by stating that lifting sixty pounds would present a significant difficulty for anyone who had undergone back surgery. *Id.* at 25, 69. Dr. Law further elaborated that he placed restrictions on Mr. Batey's activities because he "did not respond well enough [to surgery]—did not have enough recovery in his nerve function, to return to active employment." *Id.* at 9.

Dr. Law initially rated Mr. Batey's impairment at 10% to the whole body but later changed the rating to a 14% whole-body impairment. (Ex. 3 at 60.) Dr. Law testified that he likely increased the rating because of "[Mr. Batey's] residual symptoms and residual nerve problem that did not respond to surgery." *Id.* at 23. DTI stipulated to the correctness of the 14% rating. (Ex. 1 at 2.)[2]

---

[2] DTI paid Mr. Batey a sixty-day advancement of PPD benefits totaling $3,697.89, based on a stipulated compensation rate of $431.33 per week. Mr. Batey agreed that DTI overpaid him $739.11 in temporary disability benefits, thus entitling DTI to a total credit of $4,437.00 against his permanent disability award. Neither counsel explained why DTI did not pay Mr. Batey's original award of PPD benefits as required by law. The parties stipulated the initial compensation period ended November 4, 2016.

2

Mr. Batey filed a Petition for Benefit Determination seeking permanent disability benefits on July 13, 2016. The Court scheduled this hearing after a mediator certified the extent of Mr. Batey's award of permanent disability benefits for the Court's determination.

On the subject of his efforts to return to work, Mr. Batey testified without rebuttal that DTI had no available jobs when he sought to return to work there after Dr. Law released him. Mr. Batey then obtained unemployment benefits. He filed three job applications per week while receiving unemployment, none of which gained him a position. Mr. Batey did not again apply for work after his unemployment terminated until he contacted a temporary agency and the Tennessee Career Center shortly before the hearing to enquire about employment and retraining opportunities. Mr. Batey has not worked anywhere since the date of injury.

Mr. Batey testified that his back pain significantly restricts his activities. He stated he cannot perform his past work, including his job at DTI, because activities such as lifting, twisting, and getting in and out of trucks increase his pain to disabling levels. Mr. Batey asserted he has good and bad days each week with his back pain, and on bad days, he must lie down to obtain relief. He sleeps only five hours per night and is not as sharp as he once was due to lack of sleep.

Both parties introduced expert testimony regarding the vocational impact of Mr. Batey's spinal injury. Mr. Batey presented Certified Rehabilitation Counselor John W. McKinney, III, whose methodology included intellectual and educational achievement testing, assessment of Mr. Batey's work history, and consideration of his functional limitations as indicated by his self-reports and the restrictions assigned by Dr. Law. Mr. McKinney testified that Mr. Batey tested at a fifth-grade math level and a ninth-grade reading level. He concluded that the restrictions listed on the C-32 limited Mr. Batey to jobs in the "limited light exertional category."

Based on the above findings, Mr. McKinney indicated the physical limitations set by Dr. Law deprived Mr. Batey of access to 82% of the jobs for which he was qualified before his injury. Mr. McKinney placed Mr. Batey's loss of earning capacity at 50%. Taking both the above factors into account, Mr. McKinney assigned Mr. Batey a 66% vocational disability. Mr. McKinney also testified that Mr. Batey is 100% disabled from performing work for which he was qualified before his injury if his chronic pain were of such severity and persistence that it consistently precludes him from working full weeks or eight hours per day.

DTI presented the testimony of Certified Rehabilitation Counselor Michelle McBroom Weiss, whose assessment methodology was similar to Mr. McKinney's. She placed Mr. Batey in the below-average to average range in reading, spelling, math, and learning ability. While Ms. Weiss placed Mr. Batey's past work in the medium

3

exertional category, she also stated many of the jobs for which he now qualifies are entry-level. Ms. Weiss evaluated the vocational impact of Mr. Batey's injury in view of three scenarios. She testified Mr. Batey retained no vocational disability if Dr. Law released him to return to work without restrictions. She assigned a 21% vocational disability if Mr. Batey's only restriction were a fifty-pound lifting restriction. Finally, she assessed a 69% vocational disability based on the restrictions Dr. Law indicated in the C-32.

In addition to permanent disability benefits, Mr. Batey requested future medical benefits under section 50-6-204. Specifically, Mr. Batey asked for a new panel from which to select an authorized treating orthopedist, since Dr. Law moved. DTI agreed to provide the requested panel and future medical benefits.

### Findings of Fact and Conclusions of Law

*Applicable Legal Principles*

When applying the law to the facts set forth above, the Court must determine whether Mr. Batey satisfied his burden of proof. "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2016).

*Permanent Total Disability Benefits*

Here, Mr. Batey seeks PTD benefits under Tennessee Code Annotated section 50-6-207(4)(B), which provides: "When an injury . . . totally incapacitates the employee from working at an occupation that brings the employee an income, the employee shall be considered totally disabled[.]"

The threshold consideration on all of Mr. Batey's claims to increased permanent disability benefits is whether he established by a preponderance of the evidence that Dr. Law placed permanent restrictions on his activities due to his work injury. While it is true that Dr. Law initially released Mr. Batey to return to work without restrictions, with the advantage of hindsight, Dr. Law later completed a C-32 in which he placed extensive restrictions on Mr. Batey's activities. Dr. Law also testified that Mr. Batey could not return to his usual duties at DTI due to his work injury. Dr. Law explained he restricted Mr. Batey's activities after he initially released him without restrictions because it became clear that Mr. Batey's spinal surgery did not provide the hoped-for restoration of neurological function to enable him to return to active employment. When taken in its totality, the Court finds the preponderance of the evidence established that Dr. Law permanently restricted Mr. Batey's activities due to his work-related injury.

4

The Court holds that Dr. Law's assessment in the C-32 provides the best evidence of Mr. Batey's work restrictions. Neither vocational expert concluded that those restrictions totally precluded Mr. Batey from working jobs within his past skillset and training. Ms. Weiss and Mr. McKinney concluded, respectively, that Mr. Batey could still perform between 31% or 34% of the jobs for which he qualified before his injury despite the limitations placed by Dr. Law.

In view of the above, the Court holds Mr. Batey did not establish by a preponderance of the evidence that his spinal injury totally incapacitated him from working at any occupation that brings him an income. The Court thus denies Mr. Batey's claim for PTD benefits.

*Permanent Partial Disability Benefits*

Given that Mr. Batey is not entitled to PTD benefits, the Court must determine the extent of PPD benefits to which he is entitled. The assessment of the extent of PPD to which an injured employee is entitled occurs at two different times. The first assessment takes place once the treating physician places the injured employee at maximum medical improvement and assigns an impairment rating. At that time, the employee is entitled to an award, called the original award, calculated by multiplying the assigned rating by 450 weeks and, further, by the injured employee's weekly compensation rate. The injured employee is entitled to the original award whether or not he or she returns to work. *See* Tenn. Code Ann. § 50-6-207(3)(A).

Here, Dr. Law rated Mr. Batey's work injury at 14% whole-body impairment. Based on that rating, Mr. Batey is entitled to an original award of PPD benefits totaling $27,173.79 (14% x 450 x $431.33). After application of the stipulated credit, DTI owes Mr. Law $22,736.79 to compensate him for his original award of PPD benefits. The parties stipulated that the period covered by Mr. Batey's original award (also known as the initial compensation period) ended November 4, 2016; thus, DTI shall pay Mr. Batey's original award in a lump sum.

The second assessment of PPD benefits occurs at the expiration of the initial compensation period. Tennessee Code Annotated section 50-6-207(3)(B) provides,

> If at the time the [initial compensation period] ends the employee has not returned to work with any employer or has returned to work and is receiving wages or a salary that is less than one hundred percent (100%) of the wages or salary the employee received from the employee's pre-injury employer on the date of injury, the employee may file a claim for increased benefits.

The award provided by section 50-6-207(3)(B) is known as the resulting award.

5

The resulting award is calculated by applying certain multipliers to the original award based upon the injured employee's inability to return to work (1.35) and whether the injured employee lacks a high school diploma or GED (1.45), is over 40 years old (1.2), and the unemployment rate in the county in which the injured employee worked (1.3). The parties stipulated that two of the above factors—Mr. Batey's failure to successfully return to work and his age—apply here. The parties thus stipulated that Mr. Batey's PPD resulting award would total $44,021.54 ($22,736.79 x 1.35 x 1.2). The resulting award represents 22.68% disability to the whole body (14% x 1.35 x 1.2) if the Court holds he is entitled to a resulting award.

However, in lieu of an entitlement to a resulting award, Mr. Batey claims entitlement to extraordinary relief under Tennessee Code Annotated section 50-6-242(a), which allows the Court to increase an employee's award of PPD benefits above those provided in section 50-6-207(3) if the employee establishes the following by clear and convincing evidence:

1. the employee is eligible for a resulting award of PPD benefits;
2. the authorized treating physician rated the employee for impairment under the Sixth Edition of the *AMA Guides to the Evaluation of Impairment* at or above a 10% whole body rating;
3. "the authorized treating physician has certified on a form provided by the bureau that due to the permanent restrictions on activity the employee has suffered as a result of the injury the employee no longer has the ability to perform the employee's pre-injury occupation." *See* Tenn. Code Ann. § 50-6-242(a)(2)(B);
4. the employee is not earning an average weekly wage or salary that is greater than 70% of his pre-injury wage;
5. the limitation of the employee's PPD benefits to those awarded under section 50-6-207(3)(B) would be inequitable; and
6. the employee's need for additional benefits is extraordinary.

As to the first factor, DTI contended Mr. Batey is not entitled to a resulting award because Dr. Law returned him to work without restrictions. The Court rejects DTI's argument because Dr. Law clearly and convincingly testified that he permanently restricted Mr. Batey's activities and increased his impairment rating when, after the passage of several months, he concluded that Mr. Batey did not regain sufficient nerve function following surgery to return to active work. The Court further supports its decision on this point with the fact that DTI did not have available positions for Mr. Batey even when Dr. Law originally released him without restrictions.

DTI also argued the Court should deny Mr. Batey a resulting award because he failed to make a reasonable attempt to return to work before the end of his original compensation period. In response, the Court first notes section 50-6-207(D) lists three

circumstances under which an employee who does not make a successful return to work does not receive a resulting award: (1) voluntary resignation or retirement not related to the employee's work-related disability; (2) work-related misconduct; and (3) a reduction in income that affects at least 50% of hourly employees at the same location. None of these circumstances apply.

Here, clear and convincing evidence established that Mr. Batey attempted to return to work at DTI when Dr. Law released him without restrictions. DTI had no jobs available, thus leading to a termination by which Mr. Batey applied for and received unemployment benefits. While on unemployment, Mr. Batey applied for three jobs per week, but those applications earned him no offers of employment.[3] By the time the initial compensation period expired on November 4, 2016, Dr. Law had placed significant restrictions on Mr. Batey's activities because he concluded Mr. Batey did not recover sufficient nerve function following surgery to resume active employment. In view of the above, the Court holds Mr. Batey's attempts to return to work during the initial compensation period were sufficiently reasonable to entitle him to a resulting award of PPD benefits.

As to the second factor listed above, Dr. Law's deposition established that he rated the impairment due to Mr. Batey's compensable spinal injury at 14% to the whole body. The parties stipulated to this rating as well. Accordingly, Mr. Batey proved by clear and convincing evidence that the authorized treating physician rated his compensable injury for impairment at a rating greater than 10% to the whole body.

DTI contended Mr. Batey did not establish the third statutory factor because Dr. Law limited his certification of Mr. Batey's disability to whether Mr. Batey could return to work at DTI. It contends section 50-6-242(a)(1)(B) requires that Mr. Batey present a signed certification from Dr. Law establishing his inability "to perform [his] *pre-injury occupation,*" meaning Dr. Law must certify that Mr. Batey's work injury rendered him unable to perform any delivery-driver job before he can recover increased benefits. (Emphasis added.) Hence, DTI claimed Mr. Batey's proof failed on this point.

In considering this issue, the Court must determine the scope of Dr. Law's certification regarding the extent of Mr. Batey's disability. In addition to the printed text on the form he signed, Dr. Law inserted the following language: "This is per my testimony by deposition and the job description in the deposition." (Ex. 1 at 13.) The referenced job description Dr. Law was contained in a letter from Mr. Batey's counsel that described only Mr. Batey's job at DTI. A review of Dr. Law's testimony revealed he limited his disability opinion to the DTI job description. In view of the above, the Court

---

[3] Mr. Batey first testified that he did not apply for any jobs between the date of injury and November 2016, other than attempting to return to work at DTI. When reminded about the applications he placed while on unemployment, Mr. Batey testified his contrary testimony was "mistaken."

7

finds Dr. Law limited his written certification to the issue of whether Mr. Batey's back injury prohibits him from returning to his job at DTI. (Ex. 3 at 69.)

The above finding, however, does not resolve the statutory interpretation issue raised by DTI. The Court must determine whether, in enacting section 50-6-242, the general assembly intended to require the employee to medically certify he no longer has the ability to perform the specific job on which he suffered his injury, or, instead, to certify that the employee cannot perform any job within the class of employment in which the employee worked at the time of injury.

The Workers' Compensation Law does not specifically define the term "the employee's pre-injury occupation." When statutory language is subject to multiple interpretations, a court looks to the plain meaning of the language in its statutory context. In other words, a court enforces the law "impartially as written." *Berdnick v. Fairfield Glade Comm. Club,* 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *17 (May 18, 2017).

To determine the plain meaning of the term "the employee's pre-injury occupation," the Court first looks at a dictionary definition of "occupation." *Webster's New World College Dictionary, 4th Edition,* (Houghton Mifflin Harcourt 2010), defines "occupation" as "that which chiefly engages one's time; one's trade, profession or business." While the dictionary definition arguably supports both interpretations of "occupation" urged here, the Court finds that the plain meaning of "the employee's pre-injury occupation" in the context of section 50-6-242 refers to the job held by the employee at the time of injury. A broadening of the term as DTI advocated would require an employee to establish the physical requirements of hundreds of positions in order to obtain the written certification required by section 50-6-242. Such an onerous burden would be unfair to the employee and adverse to the general legislative intent favoring the administration of workers' compensation claims in a "fair, equitable, expeditious, and efficient" manner. *See* Tenn. Code Ann. § 4-3-1409(b)(2)(A).

In view of the above, the Court holds that Mr. Batey's submission of the certification signed by Dr. Law established the third factor listed above by clear and convincing evidence. (Ex. 1 at 13.)

DTI did not rebut Mr. Batey's testimony that he has not worked anywhere since the date of injury. Thus, he established by clear and convincing evidence the fourth factor listed above—that he is not earning 70% of his pre-injury rate of pay.

Lastly, the Court considers factors five and six together—whether Mr. Batey established by clear and convincing evidence that the limitation of his PPD benefits to those set forth in sections 50-6-207(3)(A) and (B) would be extraordinary and inequitable. If the Court so limits Mr. Batey's award, he will receive benefits based on a 22.68% to the whole body. This percentage of disability is approximately one-third of

8

the disability ratings set by both vocational experts who testified during the hearing. In view of the above, the Court finds Mr. Batey established by clear and convincing evidence that a limitation of his PPD benefits to those based on a disability of 22.68% is inequitable.

The Court likewise finds Mr. Batey showed by clear and convincing evidence that his need for increased benefits is extraordinary. Dr. Law testified Mr. Batey did not receive the hoped-for surgical restoration of nerve function to allow for return to active employment. For that reason, he significantly limited Mr. Batey from engaging in much of the physical activity required by the jobs he performed before he was injured. The Court finds that Dr. Law's statement that Mr. Batey retains permanent nerve damage due to his back injury supports Mr. Batey's testimony that he routinely experiences "bad days" which require him to lie down in order to obtain relief from back pain.

The vocational experts agreed that the restrictions assigned by Dr. Law deprive Mr. Batey of the ability to obtain and maintain approximately two-thirds of the jobs for which he qualified before he was injured. Mr. McKinney testified Mr. Batey's injury reduces his earning capacity by 50%, and Ms. Weiss concluded many of the jobs Mr. Batey could perform would pay him an entry-level wage. For these reasons, the Court awards Mr. Batey 275 weeks of PPD benefits under section 50-6-242.[4]

Section 50-6-242(a)(2) provides that an award of increased benefits thereunder shall not exceed a period of 275 weeks "inclusive of the benefits provided the employee under section 50-6-207(3)(A)." Mr. Batey's original award of PPD benefits covers sixty-three weeks. Under the above-quoted statute, DTI owes Mr. Batey 212 weeks of benefits after payment of his original award. DTI shall pay Mr. Batey a lump-sum payment of PPD benefits from November 4, 2016, until the date of the issuance of this order, to compensate him for accrued PPD benefits. It shall pay weekly or bi-weekly benefits afterward until it pays him a total of 275 weeks of benefits.

**It is, therefore, ORDERED:**

1. DTI and/or its carrier shall pay Mr. Batey a lump sum of sixty-three weeks of benefits, totaling $22,736.79 after application of DTI's stipulated credit, in satisfaction of the accrued original award of PPD benefits;

2. DTI and/or its carrier shall pay Mr. Batey a lump sum of forty-one weeks of benefits, totaling $17,684.53, in approximate satisfaction of the PPD benefits accruing between November 4, 2016, and the date of the issuance of this order;

---

[4] An award of 275 weeks of PPD benefits equates to a 61.11% whole-body disability.

9

3. DTI and/or its carrier shall pay ongoing PPD benefits on a weekly or bi-weekly basis until it pays 171 weeks of unaccrued benefits, for a total award of 275 weeks of PPD benefits totaling $118,615.75;

4. DTI and/or its carrier shall provide medical benefits by promptly forwarding Mr. Batey a panel of orthopedists compliant with Tennessee Code Annotated section 50-6-204 from which Mr. Batey may select a physician for ongoing treatment of his compensable injury;

5. Counsel for Mr. Batey may file a petition for attorney's fees and expenses;

6. This Court taxes the filing fee of $150.00 to DTI and/or its carrier under Tennessee Compilation Rules and Regulations Rule 0800-02-21-.07 (2016); and

7. DTI and/or its carrier shall prepare and submit a Statistical Data Form within ten business days of the date of judgment.

**ENTERED this the 18th day of August, 2017.**

**Thomas Wyatt, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Stipulations: The stipulations entered by the parties are set forth in the joint Pre-Hearing Compensation Statement they filed. (Ex. 1 at 1-2.)

Technical record: The Court marked the following documents as the technical record:

1. Petition for Benefit Determination;
2. Employee Position Statement;
3. Dispute Certification Notice;
4. Additional Documentation Submitted after DCN;
5. Scheduling Order;
6. Post-Discovery DCN;
7. Additional issues submitted by employee;
8. Additional issues submitted by employer;

9.  Notice of Filing Physician Certification Form;
10. Employee Pretrial Brief; and
11. August 3, 2017 letter from employee counsel, with attachments.

Exhibits: The Court admitted the following exhibits into evidence during the hearing:

1.  Pre-Compensation Hearing Statement, including attachments;
2.  Written Stipulation;
3.  Deposition Transcript of Dr. Melvin Law, with exhibits;[5]
4.  Notice of Indexed Medical Records; and
5.  Additional Written Stipulation.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 18th day of August, 2017.

| Name | Certified Mail | Via Email | Service sent to: |
|---|---|---|---|
| Russell Thomas, Attorney | | X | russthomas@thethomaslawfirm.com<br>Claudia@thethomaslawfirm.com |
| Michael Haynie, Attorney | | X | mhaynie@manierherod.com<br>afountain@manierherod.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

---

[5] The parties requested the Court take possession of more than 350 pages of records reviewed by Dr. Law in preparation for his deposition. After reading Dr. Law's deposition, the Court determined no need to consider the voluminous records in making its decision, and the Court will not make the records a part of the transcript of Dr. Law's deposition. If a party appeals the claim, the parties may file a motion with the Appeals Board to determine if it will accept the subject records as part of the record on appeal.